UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SPIKE GONZALES | CIVIL ACTION NO. 07-2156 |
| VS. | SECTION P |
| MOREHOUSE DETENTION CENTER, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* on December 10, 2007, by *pro se* plaintiff Spike Gonzales. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). He is incarcerated at the Morehouse Detention Center (MDC), Collinston, Louisiana. He complains of conditions of confinement at that institution and he seeks an unspecified amount of monetary damages and injunctive relief. He sued MDC Assistant Warden Isaac Brown, Nurse Pendergrass and Dr. Smith. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claim for which relief might be granted.

*Statement of the Case*

Plaintiff is an LDOC inmate serving a hard labor sentence at the MDC. He claims that he suffers from schizophrenia and manic depression [doc. 1]. Upon entry into MDC on some unspecified date, he requested treatment of his mental illness. Nurse Jones made an appointment

for him to be examined by Dr. Smith.  A few days later plaintiff was examined by Dr. Smith who asked why the plaintiff had not been sent to "Wade.[1]"  Nurse Jones informed Dr. Smith that prisoners such as plaintiff were not sent to that facility. [doc. 7]

According to plaintiff, he is being improperly medicated by Dr. Smith.  Plaintiff advised Dr. Smith that he had previously been prescribed Lithium and Dilantin; nevertheless, after examining plaintiff, Dr. Smith prescribed Zoloft and Seroquel.[2]  Plaintiff submitted administrative remedies procedure (ARP) grievances complaining about improper medication and the need to see a psychiatrist.  At some point, plaintiff apparently voluntarily ceased taking

---

[1] Presumably either Forcht-Wade Correctional Center in Keithville, Louisiana ,or David Wade Correctional Center, Homer, Louisiana, two prisons operated by the Louisiana Department of Public Safety and Corrections.

[2] Lithium is used to treat and prevent episodes of mania (frenzied, abnormally excited mood) in people with bipolar disorder (manic depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Lithium is in a class of medications called antimanic agents. It works by decreasing abnormal activity in the brain. Dilantin or phenytoin is used to treat various types of convulsions and seizures. Phenytoin acts on the brain and nervous system in the treatment of epilepsy. Zoloft or sertraline is used to treat depression, obsessive-compulsive disorder (bothersome thoughts that won't go away and the need to perform certain actions over and over), panic attacks (sudden, unexpected attacks of extreme fear and worry about these attacks), posttraumatic stress disorder (disturbing psychological symptoms that develop after a frightening experience), and social anxiety disorder (extreme fear of interacting with others or performing in front of others that interferes with normal life). It is also used to relieve the symptoms of premenstrual dysphoric disorder, including mood swings, irritability, bloating, and breast tenderness. Sertraline is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It works by increasing the amounts of serotonin, a natural substance in the brain that helps maintain mental balance. Seroquel or Quetiapine is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions). It is also used to treat episodes of mania (frenzied, abnormally excited or irritated mood) or depression in patients with bipolar disorder (manic depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Quetiapine is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain.  See Medline Plus, A service of the United States National Library of Medicine and the National Institutes of Health, Drugs, Supplements, and Herbal Information, http://www.nlm.nih.gov/medlineplus/druginformation.html.

the medication prescribed by Dr. Smith. [doc. 7]

Plaintiff approached one of the nurses and told her that his mental health was deteriorating; he complained that his exposure to second hand tobacco smoke was causing him to experience stress, burning eyes, dizziness and nausea. She offered to transfer him to "the hole" but plaintiff declined and reiterated his desire for psychiatric care. Nurse Pendergrass called Dr. Smith and he ordered plaintiff to resume taking the medication he previously prescribed. Plaintiff advised Nurse Pendergrass that the medication was not effective and she told him that he should not discontinue the medication again. Further, she explained to him that jail, by its nature, was a stressful place. [doc. 7]

Immediately after his visit with Nurse Pendergrass, he filed an ARP requesting psychiatric help, complaining about exposure to tobacco smoke, and complaining about the lack of exercise. Thereafter, Warden Brown called plaintiff out of the dorm and cursed him and poked him in the chest with his finger. According to plaintiff, Brown told him, "Quit writing all these ARPs or I will fix you." [doc. 7] He claims that Assistant Warden Brown has refused to move him to a non-smoking facility and has ignored plaintiff's grievances about second-hand tobacco smoke, plaintiff's illness, and the lack of opportunities afforded for exercise. [doc. 1] He also contends that Brown has threatened to place plaintiff in administrative segregation for writing grievances. He contends that Nurse Pendergrass has likewise provided no assistance and has also threatened plaintiff with administrative segregation. [doc. 1]

He concludes that defendants Smith and Pendergrass showed deliberate indifference to the plaintiff's need for psychiatric care. He faults Pendergrass and Brown for ignoring his requests to be moved to an institution with smoke free dorms after he complained of stress,

burning eyes, dizziness and nausea. Finally, he claims Brown has been deliberately indifferent by denying plaintiff's request for exercise and recreation. [doc. 7]

## Law and Analysis

### 1. Frivolity Review

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given

broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff has raised two general claims for relief. He contends that defendants Jones and Pendergrass have been deliberately indifferent to his medical needs by providing improper or incorrect treatment for his psychiatric condition; he contends that defendants Brown and Pendergrass are responsible for conditions of confinement in which he is exposed to second hand tobacco smoke and a lack of outdoor recreation. Plaintiff provided an incomplete statement of facts with respect to his original complaint. He was, however, directed to amend this deficient

complaint and he was specifically directed to "...describe the <u>injuries he sustained</u> as a result of the conditions of confinement about which he complains." He was also directed to provide more specifics with regard to his conditions of confinement claims. [doc. 5] Plaintiff has thus been afforded an opportunity to provide the allegations of fact necessary to state a claim. As is shown hereinafter, he has not taken full advantage of this opportunity and his complaint and amended complaint are clearly subject to dismissal on initial review in accordance with the provisions of 28 U.S.C. §§1915 and 1915A.

## 2. Medical Care

Plaintiff claims that Dr. Jones and Nurse Pendergrass have treated his medical condition inappropriately. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely

from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

More importantly, and apropos to the facts of this complaint, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not alleged that either of the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that anyone actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not these defendants, or any others, "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report.

The complaint reveals that plaintiff was examined by both a nurse and a physician; further, the complaint reveals that plaintiff has been offered and provided medication to treat his psychiatric condition. Plaintiff, of course, merely disagrees with the efficacy of treatment provided, and, as shown above, this disagreement with diagnosis and treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims against Dr. Jones and Nurse Pendergrass are therefore frivolous and dismissal on that basis is recommended.

*3. Conditions of Confinement – Exposure to Second-Hand Tobacco Smoke*

Plaintiff also complains that his continued exposure to second-hand tobacco smoke and the defendants' refusal to allow sufficient recreation and exercise violate his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff's conditions of confinement claim does indeed arise under the Eighth Amendment. See *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir.2004) ("The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.") The jurisprudence interpreting the Eighth Amendment requires that the conditions of an inmate's confinement are humane and that inmates receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). When analyzing a particular condition of confinement, the court must consider whether society considers the risk of harm associated with the condition to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to the risk occasioned by the

inmate's exposure to that condition. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). An actionable deprivation must be so serious as to "deprive prisoners of the minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Gates v. Cook*, 376 F.3d at 332-33.

An inmate-litigant, in addition to demonstrating that the alleged deprivation is sufficiently serious, must also show that the defendants possessed sufficiently culpable states of mind. *Herman v. Holiday*, 238 F.3d at 664. As with medical care claims, with regard to general conditions of confinement, prison officials cannot be found liable under the Eighth Amendment unless they knew of, and disregarded, an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 840-41, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff implies that his exposure to second-hand tobacco smoke posed such an excessive risk to his health. In *Helling v. McKinney*, 509 U.S. 25, 35-36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the United States Supreme Court approved the following analysis to determine whether exposure to environmental tobacco smoke violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishment –

(1) plaintiff must prove objectively that he is being exposed to unreasonably high levels of environmental tobacco smoke. *Id.* at 35. (In making this assessment, the court must inquire into the seriousness of the potential harm and the likelihood that environmental tobacco smoke will actually cause such harm; *Id.* at 36 and also assess whether society considers the risk to be so grave that it violates contemporary standards of decency to expose someone unwillingly to such a risk. *Id.*); and,

(2) plaintiff must show that the defendants acted with deliberate indifference in exposing

9

him to level of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health. *Id.* at 35.

The Fifth Circuit, applying the foregoing analysis, has recognized at least potentially meritorious second-hand tobacco smoke claims where exposure to tobacco smoke was severe and sustained, such as when the plaintiff shared living quarters with a smoker (see *Whitley v. Hunt*, 158 F.3d 882, 887-88 (5th Cir.1998) overruled on other grounds by *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)); or was required to work in a smoke-filled environment. (See *Rochon v. City of Angola*, 122 F.3d 319, 320 (5th Cir.1997)).

On the other hand, the Fifth Circuit rejected an environmental tobacco smoke claim where the plaintiff was exposed to tobacco smoke on bus rides to and from work. *Richardson v. Spurlock*, 260 F.3d 495, 498-99 (5th Cir.2001) (Sporadic and fleeting exposure to second-hand smoke does not constitute unreasonably high levels of environmental tobacco smoke, even if it causes discomfort such as coughing and nausea). Indeed, the Fifth Circuit also cited with approval *Oliver v. Deen*, 77 F.3d 156 (7th Cir.1996), a case in which the Seventh Circuit rejected an Eighth Amendment claim of an asthma sufferer who alleged that sharing a cell with a smoker for 133 days caused him to wheeze, gasp for breath, and suffer from dizziness and nausea. *Richardson v. Spurlock*, 260 F.3d at 499.

In his original complaint, plaintiff alleged: "Asst. Warden Issac Brown will not move me to a non-smoking facility and has ignored my grievances about cigarette smoke ... Nurse Pendergrass offered no help on non-smoking issue and threatened administrative segregation for the remainder of my sentence as relief'" [doc. 1] Plaintiff was directed to amend his complaint to provide "... a description of what actually occurred or what each defendant did to violate

plaintiff's rights..." along with "... the place and date(s) that each event occurred." As noted above, he was also directed to amend his pleadings to allege a specific injury. [doc. 5] In response he alleged only that "... he went to the Nurse about his condition and the tobacco smoke stressing him out being surrounded by it 24 hours a day and burning his eyes making him dizzy and nauseated..." [doc. 7]

Plaintiff was afforded the opportunity to amend his pleadings to allege the extent of exposure and the specific injury sustained as a result of that exposure. He provided little or no clarification of this claim. The undersigned must conclude that plaintiff's exposure to tobacco smoke does not rise to the unreasonably high level of environmental tobacco smoke necessary to state an Eighth Amendment claim; nor does it violate contemporary standards of decency. Further, and more importantly, plaintiff has not shown that any of the defendants were deliberately indifferent to his exposure to environmental tobacco smoke. In fact, he was offered a reasonable alternative, confinement in administrative segregation, which he rejected. Plaintiff's conditions of confinement claim should therefore be dismissed as frivolous or for failing to state a claim for which relief may be granted.

*4. Conditions of Confinement – Recreation/Exercise*

Finally, plaintiff complains that defendant Brown has been "deliberately indifferent by denying the plaintiff's ARPs and request for recreation and exercise by not allowing prisoners outdoor activity which is in violation of the Eighth Amendment..." [doc. 7] Contrary to plaintiff's assertion, neither the Supreme Court nor the Fifth Circuit Court of Appeals has ever specifically held that inmates enjoy an <u>absolute right</u> of out-of-cell recreation or exercise. *Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir.1986) (The Fifth Circuit set aside lower court's judgment

requiring county jail to provide either outdoor exercise or an indoor exercise facility.); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983) (The deprivation of exercise is not *per se* violative of the Eighth Amendment.)

The Fifth Circuit has always and only held that an <u>extended deprivation of exercise opportunities</u> might impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case. *Green*, 801 F.2d at 771-72; *Ruiz*, 679 F.2d at 1152 (Factors, such as cell size, the amount of time the inmate spends in his cell each day, and the overall duration of confinement together with the inmate's physical and other needs must be considered in determining whether an inmate is denied the opportunity for regular physical exercise); *Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir. Unit A 1981); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir.1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise ... <u>may</u> make out an eighth amendment violation."(emphasis supplied)). The United States Supreme Court as well as the courts of other circuits, have included exercise as one of the "basic human needs" protected by the Eighth Amendment. See, e.g., *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets."; *Williams v. Greifinger*, 97 F.3d 699, 704 (2nd Cir.1996) ("... some opportunity for exercise must be afforded to prisoners. "); *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir.1994) (a

long-term deprivation of exercise is a denial of a basic human need in violation of the Eighth Amendment). The Fifth Circuit itself has acknowledged that "[i]nmates require regular exercise to maintain reasonably good physical and psychological health." *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.1982) (citing *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir.1980); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979)).

In other words, under the Eighth Amendment, prison officials must, at a minimum provide an adequate <u>opportunity for exercise</u> – whether indoors or out. Furthermore, such claims must be evaluated on a case-by-case basis and, in order to determine whether an inmate is being afforded an adequate opportunity to exercise, the court must generally consider a series of factors, including: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day, and (3) the overall duration of his confinement. *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986); *Ruiz*, 679 F.2d at 1152.

Here, plaintiff has not alleged the total deprivation of <u>exercise opportunities</u> – but rather only the denial of <u>outdoor</u> recreation opportunities, and that is insufficient to establish an Eighth Amendment violation.

### *5. Conclusion and Recommendation*

Plaintiff's medical care and conditions of confinement claims are frivolous or fail to state claims for which relief may be granted and dismissal on that basis is recommended.

Therefore, based on the foregoing,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 18th day of March, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE